UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE GARRIGAN GROUP, LLC<br>d/b/a COCO & DASH, | §<br>§<br>§ | |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 3:22-CV-0003-B |
| HÄSTENS SÄNGAR AB, | §<br>§<br>§ | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Hästens Sängar AB ("Hästens")'s Motion to Dismiss Plaintiff's Second Amended Complaint. Doc. 41, Mot. Dismiss. Because Plaintiff The Garrigan Group, LLC d/b/a Coco & Dash ("Coco & Dash") has failed to establish the Court has personal jurisdiction over Hästens, the Motion to Dismiss (Doc. 41) is **GRANTED** and Coco & Dash's claims are **DISMISSED WITHOUT PREJUDICE**.

I.

BACKGROUND[1]

Hästens is a Swedish corporation that manufactures, distributes, and sells beds, mattresses, linens, quilts, pillows, and other related products. Doc. 39, Second Am. Compl., ¶ 10. For many of those product categories, Hästens owns several trademarks relating to a checkered-color pattern, known as "buffalo check." *Id.* ¶¶ 11–32. For example:

---

[1] The Court draws the following factual account from Coco & Dash's Second Amended Complaint (Doc. 39).



*Id.* ¶ 13–14 (showing U.S. Registration No. 3,813,053, which is one of Hästens's nine trademarks for the buffalo-check pattern and covers products such as bedroom furniture, mattresses, and bed linens, among others).

Plaintiff Coco & Dash is a small retail store in Dallas, Texas that sells home accessories. *Id.* ¶ 3. In 2019, Coco & Dash decided to market a sofa with the buffalo-check pattern, which it had custom built and delivered for sale in its Dallas store:



*Id.* ¶ 33.

In November 2021, Hästens's counsel sent a cease-and-desist letter to Coco & Dash asserting that the marketing and/or sale of the sofa infringed Hästens's trademarks. *Id.* ¶ 34.

Hästens warned that if Coco & Dash did not stop selling the sofa or other similar pieces of furniture, it would seek remedies under the Lanham Act. *Id.*

In response, Coco & Dash filed the present action, seeking a declaratory judgment that (1) Coco & Dash's marketing or sale of the sofa does not infringe Hästens's trademarks and (2) Hästens's trademarks are, in any event, invalid and unenforceable. *Id.* ¶¶ 49–65. Hästens subsequently moved to dismiss the complaint, arguing that this Court lacks personal jurisdiction over Hästens and that Coco & Dash fails to state a plausible claim for relief. Doc. 41, Mot. Dismiss; *see* Fed. R. Civ. P. 12(b)(2), (6). Having considered the motion, the Court finds that Hästens lacks the minimum contacts with Texas necessary for personal jurisdiction.

## II.

## LEGAL STANDARD

"The plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident, but it need only make a prima facie case if the district court rules without an evidentiary hearing." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The court must take as true the uncontroverted allegations of the plaintiff's complaint, and any dispute as to the facts must be resolved in favor of the plaintiff. *Id.*

Personal jurisdiction exists when "the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020). But "[b]ecause the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

Due process has two elements. First, the nonresident defendant must have purposefully availed itself of the benefits and protections of the forum state through "minimum contacts" such

that it should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985). Second, the exercise of jurisdiction over the defendant must "not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). General jurisdiction permits a court to hear all claims against the nonresident defendant when the defendant's affiliations with the forum state are so "continuous and systematic" as to render it essentially at home in that state. *Sangha*, 882 F.3d at 101 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction, by contrast, "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quoting *Goodyear*, 564 U.S. at 919).

"Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Id.* at 102. In determining whether the assertion of jurisdiction is fair, the court considers: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.*

III.

ANALYSIS

The Court finds that Hästens's contacts with Texas are not enough to render it essentially "at home" in Texas for purposes of general jurisdiction. Nor are Hästens's contacts with Texas sufficiently related to Coco & Dash's claims to support specific jurisdiction.

A.  *The Court Lacks General Personal Jurisdiction over Hästens*

Coco & Dash seems to only plead specific jurisdiction in its Second Amended Complaint. *Compare* Doc. 39, Second Am. Compl., ¶ 6 ("Hästens has intentionally and purposefully availed itself of the privileges and benefits of doing business in Texas . . . . Thus, this Court has specific personal jurisdiction over Hästens."), *with* Doc. 17, Am. Compl., ¶ 6 ("[T]his Court has both general and specific personal jurisdiction over Hästens."). Indeed, as a threshold matter, Coco & Dash has not alleged adequate facts to establish general jurisdiction over Hästens.

A corporation is paradigmatically "at home" in two places: "(1) [its] state of incorporation and (2) the state where it has its principal place of business." *Frank*, 947 F.3d at 337 (citing *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017)). And "[e]ven though a corporation might operate 'in many places,' . . . [the general jurisdiction] inquiry . . . is whether that corporation's affiliations with the State are so continuous and systematic as to render [it] essentially at home." *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014)). "It is, therefore, incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

Here, Hästens is incorporated in Sweden, and its principal place of business is in Koping, Sweden. Doc. 39, Second Am. Compl., ¶ 4. As for contacts with Texas, Coco & Dash points to Hästens's "marketing and sales of its products" through two retail establishments: The Hästens

Store Dallas and The Luxury Bed Collection. *Id.* ¶ 6. But without more, Hästens's marketing and sales of its products through two retailers in Texas is not "continuous and systematic" enough to render it "essentially at home" in Texas. *See, e.g.*, *Daimler*, 571 U.S. at 139 (holding that defendant's multiple offices and sales presence alone were insufficient to render it "at home" in the forum). The Court therefore finds that Coco & Dash has not alleged a prima facie case for general jurisdiction.

B.      *The Court Lacks Specific Personal Jurisdiction over Hästens*

Specific jurisdiction, by contrast, "depends on an affiliation between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 919 (internal quotation and alterations omitted). Minimum contacts exist for specific personal jurisdiction "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal quotation omitted). The Court thus looks to the specific claims and assesses their relationship with the defendant's forum-related contacts. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The Supreme Court has also made clear that the necessary relationship between the defendant and the forum state "must arise out of the contacts that the 'defendant *himself*' creates within the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King*, 471 U.S. at 475). The inquiry is so limited because due process "protect[s] the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.*

Coco & Dash asserts two claims for declaratory judgment that (1) Coco & Dash's marketing or sale of the sofa does not infringe Hästens's trademarks and (2) Hästens's trademarks are invalid and unenforceable. Doc. 39, Second Am. Compl., ¶¶ 49–65. In support of specific

jurisdiction, Coco & Dash points to Hästens's "longtime retail presence in the state of Texas" as evidence that "Hästens has intentionally and purposefully availed itself of the privileges and benefits of doing business in Texas." *Id.* ¶ 6. In its response to Hästens's Motion to Dismiss, Coco & Dash further clarifies that its claims are related to and arise from Hästens's contacts with Texas because the claims were brought "to seek a declaratory judgment of non-infringement in connection with and related to Hästens [sic] sale of beds, mattresses and/or sleep accessories [in Dallas]." Doc. 42, Resp., 8. Thus, Coco & Dash argues, any consumer confusion actionable under the Lanham Act would necessarily occur "as a result of Hästens's presence and business activity" in Texas. *Id.*

The problem with that argument, however, is that it relies on Coco & Dash's own activities in Texas to establish personal jurisdiction over Hästens. Coco & Dash alleges personal jurisdiction because its "cause of action arises out of the fact that [Coco & Dash's] sofa is sold in the same metropolitan area where Hästens's mattresses are sold." *Id.* Coco & Dash's sale of its own sofa, however, cannot serve as the basis for personal jurisdiction over a nonresident defendant. *See Walden*, 571 U.S. at 284. Rather, the Court must only look to Hästens's contacts with the forum state. In so doing, the Court finds that Coco & Dash's claims are not sufficiently related to Hästens's contacts for specific jurisdiction.

Indeed, in *Ham v. La Cienega Music Co.*, 4 F.3d 413 (5th Cir. 1993), the Fifth Circuit addressed a similar scenario. There, a plaintiff sought a declaratory action for noninfringement against the owner of a copyrighted song. *See id.* at 415. In support of personal jurisdiction, the plaintiff pointed to the copyright owner's use of his copyrights nationwide, the sale of recordings in Texas, an affiliation agreement with a company in Texas for performance rights, and the owner's demand letter sent to plaintiff warning of infringement. *Id.* at 414. While acknowledging the

copyright owner's contacts with Texas, the court held that the plaintiff had only "demonstrated at best a highly attenuated relationship" to the declaratory judgment action. *Id.* at 416. The resolution of the action depended "solely upon whether [the plaintiff] infringed copyrights," and the owner's forum contacts "in no way relate[d] to the merits of that question." *Id.*

More recently, courts in this district have addressed the issue with regards to trademark. In *Axxess Technology Solutions Inc. v. Epic Systems Corp.*, a plaintiff sought a declaratory judgment for noninfringement of trademark. 2017 WL 3841604, at *1 (N.D. Tex. Jan. 23, 2017) (Godbey, J.). The plaintiff argued the court had specific jurisdiction because the owner of the mark served customers in Texas and "the case ar[ose] out of the parties' simultaneous use of their marks in Texas." *Id.* at *3. But the court rejected that argument, finding that the question of whether the plaintiff was infringing the owner's mark had "nothing to do with [the owner's] customers in Texas" and thus did not arise out of the owner's forum contacts as required for specific jurisdiction. *Id.* at *4; *see also Am. Univ. Sys., Inc. v. Am. Univ.*, 858 F. Supp. 2d 705, 716 (N.D. Tex. 2012) (Lindsay, J.) (finding a lack of personal jurisdiction, even though the defendant displayed and sold products bearing the mark in Texas, because Plaintiff's injury was not sufficiently related).

Coco & Dash's basis for specific personal jurisdiction suffers the same fatal flaw. Coco & Dash's first claim is a declaratory action for noninfringement of Hästens's mark. Doc. 39, Second Am. Compl., ¶¶ 49–57. Like in *Ham*, *Axxess*, and *American University Systems*, the Court finds that Hästens's contacts with Texas are too attenuated to support specific personal jurisdiction. Specifically, Hästens's "longtime retail presence in the state of Texas" and the "marketing and sales of its products" in Texas are not sufficiently related to Coco & Dash's declaratory action for noninfringement. *See id.* ¶ 6. Rather, resolution of the claim depends only on whether Coco & Dash is infringing Hästens's trademark. *See Axxess*, 2017 WL 3841604, at *4 ("[R]esolution of this

case depends only upon whether [plaintiff] is infringing [defendant's] trademark."); *Ham*, 4 F.3d at 416 ("[R]esolution of this action depends solely upon whether [plaintiff] infringed copyrights owned by [defendants].").

Coco & Dash's second claim, which attacks the validity of Hästens's marks on grounds such as functionality or fraud, is even more attenuated from Hästens's forum contacts. *See* Doc. 39, Second Am. Compl., ¶¶ 58–65. Resolution of the issue depends only on whether Hästens's marks are valid, and the claim does not arise out of or relate to Hästens's Texas presence.

By contrast, the cease-and-desist letter Hästens sent to Coco & Dash does relate to Coco & Dash's claims. *See id.* ¶ 34. But without more, cease and desist letters cannot serve as the basis for a court's exercise of personal jurisdiction. *See, e.g.*, *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 386 (5th Cir. 2008) (holding that a cease-and-desist letter was insufficient to establish the required minimum contacts for specific jurisdiction); *Expedite IT AOG, LLC v. Clay Smith Eng'g, Inc.*, 2010 WL 2671314, at *4 (N.D. Tex. June 30, 2010) (Lindsay, J.) ("The mere act of asserting a trademark or copyright right through a cease and desist letter does not subject that party to specific personal jurisdiction.").

In sum, the Court may only look to Hästens's own contacts with Texas in determining personal jurisdiction. When doing so, the Court determines that Coco & Dash's claims are not sufficiently related to establish specific jurisdiction over Hästens because the resolution of Coco & Dash's trademark infringement questions does not relate to Hästens's limited business activities in Texas.

IV.

CONCLUSION

Coco & Dash has failed to allege facts sufficient to exercise general or specific personal jurisdiction over Hästens in this action. Therefore, Hästens's Motion to Dismiss (Doc. 41) is **GRANTED** and Coco & Dash's claims against Hästens are **DISMISSED WITHOUT PREJUDICE**.

SO ORDERED.

SIGNED: December 5, 2022.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE